**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0336n.06

**No. 10-3280**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Apr 04, 2013*

DEBORAH S. HUNT, Clerk

GAREY SMITH,

      Petitioner-Appellant,

v.

JOHN COLEMAN, Warden,

      Respondent-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

                            /

BEFORE:    CLAY and WHITE, Circuit Judges; HOOD, District Judge.[*]

**CLAY, Circuit Judge.** In 2002, an Ohio jury found Petitioner Garey Smith guilty of

murder, attempted murder, and numerous felonious assaults arising out of the shooting of three men

and the shooting death of a fourth. Following an Ohio appellate court's reversal of his convictions

based on the denial of Petitioner's right to self-representation, the case was remanded for a new trial.

Petitioner then filed this petition for a writ of habeas corpus, purportedly under 28 U.S.C. § 2254,

claiming violations of his rights under the Double Jeopardy Clause. The district court stayed the

resolution of the petition until the end of Petitioner's state court proceedings. After the conclusion

of the state court proceedings, the district court denied Petitioner his requested habeas relief. On a

motion for reconsideration, however, the district court granted Petitioner a certificate of appealability

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

on his double jeopardy claims. For the reasons that follow, we **AFFIRM** the district court's denial of a writ of habeas corpus to Petitioner.

## BACKGROUND

Petitioner Garey Smith was indicted on eleven counts stemming from a shooting incident involving four victims that occurred on May 14, 2001. Petitioner was charged with the murder of Jimmie Gordon; attempted murder and two counts of felonious assault as to Jeffrey King; attempted murder and two counts of felonious assault as to Steven Franklin; attempted murder and two counts of felonious assault as to Andre Ridley; and, finally, a weapons charge. The jury found Petitioner guilty on all charges except the attempted murder of King.

Central to one of his claims in this appeal, Petitioner claims prosecutorial misconduct from his first trial. Specifically, the prosecutor elicited testimony from Franklin about his non-use of drugs when the prosecutor knew that Franklin had previously dealt crack cocaine. *See State v. Fears*, 715 N.E.2d 136, 143–46 (Ohio 1999); *State v. Grant*, No. C-9710001, 2001 Ohio App. LEXIS 1388, at *7 (Ohio Ct. App. Mar. 23, 2001)). Next, the prosecutor elicited testimony that Franklin had been shot from behind when his medical records, to which the prosecutor stipulated, indicated that all of his bullet wounds were on the front of his body. Third, the prosecutor told the jury in his closing argument that Gordon was seventeen years old, but he had previously elicited testimony from a witness that Gordon was twenty-nine at the time of his death. Fourth, the prosecutor told the jury that Petitioner had lied to them and elaborated: "It was one of the biggest bold-faced lies I ever have heard in a courtroom. He looked at you, right in the eye, lied to you and never batted an eye . . . ." (R. 126-14, at PID# 3473.) Additionally, the prosecutor claimed that had another bystander, Nick

Grant, been present when Petitioner came across Gordon, Franklin, King, and Ridley, Petitioner would have shot Grant as well. Finally, the prosecutor attempted to bait Petitioner into losing his temper.

MR. KRUMPELBECK [(Prosecutor)]:
. . . He gives you not one single reason. Did you hear a reason why he went back over there?

THE DEFENDANT [(Petitioner)]:
I lived there.

MR. KRUMPELBECK: On the evening of the fourteenth, did you? Are you mad at me now?

THE DEFENDANT: You said you didn't hear a reason. I live there.

THE COURT: Mr. Smith, please. Go ahead, Mr. Krumpelbeck.

MR. KRUMPELBECK: I knew that was going to happen. I thought it was going to happen yesterday. I was surprised it didn't. What I was showing, a little bit of the anger, *I was trying to bait him*. I knew this would happen. I knew he would respond. He couldn't keep his mouth shut. That's what this is all about. He is an uncontrollable rage.

(*Id*. at 3480–81 (emphasis added).) At no point, however, did Petitioner move for a mistrial because of the prosecutor's conduct.

During sentencing, the state trial judge merged, pursuant to Ohio Rev. Code § 2941.25(A), Petitioner's two felonious assault convictions into his attempted murder conviction with respect to Franklin; his two felonious assault convictions with respect to King into each other; and his two felonious assault convictions into his attempted murder conviction with respect to Andre Ridley. Therefore, Petitioner was sentenced on two counts of attempted murder and one count each of

murder, felonious assault, and unlawful possession of a weapon, for which he received a total prison term of forty-seven years to life.

Petitioner appealed his convictions to the Ohio Court of Appeals, asserting various bases, including the denial of his right to self-representation and prosecutorial misconduct. In that appeal, however, Petitioner did not challenge the sufficiency of the evidence with respect to any of his convictions. The Ohio Court of Appeals found Petitioner's self-representation claim meritorious and ordered a new trial on that basis. *State v. Smith* (*Smith I*), No. C-020610, 2004 WL 102285, at *7 (Ohio Ct. App. Jan. 23, 2004). However, that court saw fit to comment on Petitioner's prosecutorial misconduct claim as well:

> Although not central to the disposition of this appeal, we feel compelled to comment on Smith's allegations of prosecutorial misconduct during closing argument. We agree that the prosecutor's comments on the veracity of Smith, his admitted attempts to bait Smith into losing his temper, and his comments on facts not in evidence were improper. The prosecutor's actions under other circumstances may have provided a basis for reversal and the order of a new trial, but given our disposition of the first assignment of error, this issue has been rendered moot.

*Id.*

On remand, Petitioner was recharged with the ten counts of which he had been found guilty at his first trial. Petitioner filed a motion to dismiss these charges with the second state trial court based, in part, on the prosecutorial misconduct from his first trial; however, he did not argue in that motion that there was insufficient evidence in the first trial. Following a denial of that motion by the second state trial court but prior to the commencement of the second state trial, Petitioner, then proceeding *pro se*, filed this habeas petition in the United States District Court for the Southern District of Ohio. The petition was styled as seeking relief under 28 U.S.C. § 2254. Proceedings on

the petition were stayed pending the termination of the state court proceedings.[1] Petitioner appealed

that decision to this Court, and we reinstated the case because Petitioner had since exhausted

available state-court remedies. *Smith v. Jackson*, 229 F. App'x 405, 407 (6th Cir. 2007) (per

curiam).

Following our 2007 *Smith* decision, the district court reinstated Petitioner's habeas petition.

The petition was referred to a magistrate judge, who recommended denying Petitioner habeas relief.

*See Smith v. Warden, S. Ohio Corr. Facility*, No. 1:04cv579, 2009 WL 6698609 (S.D. Ohio Jan. 5,

2009). As to Petitioner's misconduct-based double jeopardy claim, the magistrate judge

---

[1] Briefly, as the subsequent state court proceedings are not central to the current appeal, the second state trial resulted in a hung jury on the murder and remaining two attempted murder counts, but the jury found Petitioner guilty of six counts of felonious assault and the weapons charge. Petitioner appealed this second set of convictions to the Ohio Court of Appeals, which reversed his felonious assault convictions relating to King and remanded the other counts for resentencing. *See State v. Smith* (*Smith II*), 858 N.E.2d 1222 (Ohio Ct. App. 2006). On the second remand, Petitioner again filed a motion to dismiss based on double jeopardy, which was denied. The King felonious assault counts were dismissed, and Petitioner was resentenced to a total of thirty-six years in prison: eight years for each of the four remaining felonious assault counts, one year on the weapons charge, and three years for the merged attendant firearms specifications, all to run consecutively.

On his third trip to the Ohio Court of Appeals, the court affirmed in part but vacated and remanded the consecutive sentences for the four felonious assault convictions in light of *State v. Cabrales*, 886 N.E.2d 181 (Ohio 2008). *See State v. Smith* (*Smith III*), No. C-070216, 2008 WL 2154770, at *3 (Ohio Ct. App. May 23, 2008). On the third remand, the state court merged the two Franklin felonious assault counts together as well as the two Ridley felonious assault counts together and sentenced Petitioner to nineteen years in prison: eight years for each set of merged felonious assault counts and three years for the previously merged firearms specifications, all to run consecutively.

In separate proceedings, Ohio moved to retry Petitioner on the murder and attempted murder charges on which the second jury had hung. The trial court dismissed the attempted murder charges, and a third jury eventually acquitted Petitioner of the murder charge.

Additionally, after exhausting his state court appeals, Petitioner filed another habeas petition challenging his convictions and sentences from the third remand. The district court denied that petition, and we affirmed. *See Smith v. Coleman*, 453 F. App'x 625 (6th Cir. 2011).

recommended denying it based on the lack of clearly established law. As to his merger-based double jeopardy claim, the magistrate judge recommended finding it moot. The district court agreed with the magistrate judge's recommendation and denied Petitioner habeas relief. *See Smith v. Warden, S. Ohio Corr. Facility*, No. 1:04cv579, 2010 WL 451060 (S.D. Ohio Feb. 8, 2010). On reconsideration, however, the district court issued a "certificate of appealability . . . with respect to Petitioner's claim that his retrial on criminal charges after his first conviction was reversed violates the Double Jeopardy Clause." *Smith v. Warden, S. Ohio Corr. Facility*, No. 1:04cv579, 2010 WL 2667418, at *3 (S.D. Ohio July 2, 2010).

## STANDARD OF REVIEW

It is a familiar rule that this Court liberally construes *pro se* filings such as Petitioner's. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Despite the fact that Petitioner filed his petition under 28 U.S.C. § 2254, "a petitioner cannot forfeit or waive the standards that apply to habeas petitions." *Phillips v. Court of Common Pleas*, 668 F.3d 804, 809 n.1 (6th Cir. 2012); *see also Fisher v. Rose*, 757 F.2d 789, 792 n.2 (6th Cir. 1985) (recognizing our ability to construe a pretrial habeas petition filed under § 2254 as being brought under § 2241). Therefore, because his petition was filed before his second trial and attacked his pretrial detention rather than a state court judgment or conviction, his petition is "properly governed by [28 U.S.C.] § 2241" and subject to *de novo* review.[2] *See Phillips*, 668 F.3d at 810 n.3 (6th Cir. 2012).

---

[2] Respondent's argument that this petition should be reviewed under AEDPA's deferential standard because even though it was filed prior to a state court judgment, it was not considered until after a judgment had been rendered, is unavailing. What determines our standard of review is the nature of the claims raised and "the time [the petitioner] filed his petition," *Stow v. Murashige*, 389 F.3d 880, 885 (9th Cir. 2004) (alteration omitted), not the "present status of the case pending against

## DISCUSSION

The Fifth Amendment's Double Jeopardy Clause, incorporated against the states in *Benton v. Maryland*, 395 U.S. 784 (1969), "affords a defendant three basic protections: [i]t protects against a second prosecution for the same offense after acquittal[; i]t protects against a second prosecution for the same offense after conviction[; a]nd it protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (internal quotation marks omitted). It does not, however, "offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). Petitioner asserts two bases for his double jeopardy claim: (1) the prosecutorial misconduct in his first trial; and (2) the merger under Ohio law of his felonious assault convictions for his first sentencing and subsequent unmerging for his second trial.

## I. Prosecutorial Misconduct Double Jeopardy Claim

The Supreme Court has held that the Double Jeopardy Clause generally "does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988). Double jeopardy does, however, generally bar re-prosecution "[w]here the trial is terminated over the objection of the defendant," except if the

---

him," *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987); *see also Jacobs v. McCaughtry*, 251 F.3d 596, 597 (7th Cir. 2001) (per curiam) (holding that § 2241 was the proper statute for the petitioner's pretrial double jeopardy challenge). *But see Jackson v. Coalter*, 337 F.3d 74 (1st Cir. 2003)*.* Any other rule would be unworkable. Given the long delays in the habeas process, of which this case is but one example, a different rule would see many § 2241 petitions converted to petitions under § 2254.

government can meet the manifest necessity standard (e.g., in the case of a hung jury). *Kennedy*, 456 U.S. at 672. Conversely, when "a mistrial [is] declared at the behest of the defendant," there is also generally no bar to re-prosecution. *Id*. In *Kennedy* though, the Court recognized that double jeopardy will bar re-prosecution even if a defendant successfully moves for a mistrial "[o]nly where the governmental conduct . . . [was] intended to 'goad' the defendant into moving for a mistrial." *Id*. at 676.

Petitioner urges us to expand *Kennedy* beyond the mistrial context to situations "where the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *United States v. Wallach*, 979 F.2d 912, 916 (2d Cir. 1992). We need not, however, explore the outer bounds of double jeopardy's protections to resolve Petitioner's claim. The situation that both *Kennedy* and Petitioner's proposed rule seeks to obviate is where the prosecutor "anticipates an acquittal[, but t]o stave off the acquittal and thus be able to retry the defendant, the prosecutor commits an error" that forces a retrial. *United States v. Catton*, 130 F.3d 805, 806 (7th Cir. 1997). Such action could allow a prosecutor to "try a defendant over and over again . . . until finally he had enough evidence to have a good shot at a conviction." *Id*. at 806. Therefore, the only relevant intent to the double jeopardy inquiry is the prosecutor's "intent to terminate the trial, not intent to [secure a conviction] at this trial by impermissible means." *United States v. Oseni*, 996 F.2d 186, 188 (7th Cir. 1993); *see also Sanborn v. Parker*, 629 F.3d 554, 580–81 (6th Cir. 2010); *cf. United States v. Thomas,* 728 F.2d 313, 318 (6th Cir. 1984) ("[P]rosecutorial behavior will bar

8

a second trial only where such behavior was 'intentionally' calculated to cause or invite mistrial."), *abrogated on other grounds by United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994).

Petitioner's best evidence of this requisite intent is the prosecutor's statement that he was "trying to bait" Petitioner into interrupting his closing argument. However, the prosecutor goes on to say, "I knew this would happen. I knew he would respond. He couldn't keep his mouth shut. That's what this is all about. He is an uncontrollable rage." Taken together, these statements show that the prosecutor was trying to goad Petitioner into responding in order to demonstrate to the jury Petitioner's problem in controlling his anger, which the prosecutor presumably thought would make it more likely that they would find Petitioner guilty. This is the type of intent that is irrelevant for double jeopardy purposes, *see Oseni*, 996 F.2d at 188, because the prosecutor is not attempting to vitiate "the defendant's valued right to complete his trial before the first jury," *Kennedy*, 456 U.S. at 673. This conclusion that the prosecutor was simply trying to secure a conviction is bolstered by the other examples of prosecutorial misconduct that Petitioner relies on, as all of them seem to be attempts to secure a conviction, not to induce a need for retrial. Therefore, because Petitioner cannot demonstrate that the prosecutor acted with the requisite intent so as to implicate double jeopardy's bar against multiple prosecutions, s*ee Oseni*, 996 F.2d at 188, we conclude that habeas relief is not proper on this basis.

## II.   Ohio Merger Double Jeopardy Claim

Petitioner's second basis is more specific than his first. It relates only to the felonious assault counts that were merged into more serious offenses, such as attempted murder, for the purpose of sentencing after his first trial. This claim implicates Ohio's merger doctrine. Specifically, under

Rule 32(C) of the Ohio Rules of Criminal Procedure, only "convictions" can be appealed. *See State v. Baker*, 893 N.E.2d 163, 166 (Ohio 2008). Ohio defines a "conviction" as "consist[ing] of [a] verdict and sentence." *State v. McGuire*, 686 N.E.2d 1112, 1120 (Ohio 1997). Therefore, when verdicts of allied offenses are merged for sentencing, *see* Ohio Rev. Code § 2941.25, a defendant may seek reversal of only the count on which he was sentenced because he technically does not have a conviction on the merged counts (i.e., the counts on which he did not receive a sentence). *See, e.g., State v. Williams*, 968 N.E.2d 27, 33 (Ohio Ct. App. 2011). Petitioner now claims that there was insufficient evidence on his merged felonious assault counts and that his double jeopardy rights were violated when he was retried on those counts at his second trial. *See Burks v. United States*, 437 U.S. 1, 18 (1978) ("[T]he Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient.")

Claims pursued in federal habeas must first be exhausted in state court. *Phillips*, 668 F.3d at 810 & n.4. "[E]xhaustion requires that the same claim under the same theory be presented to the state courts before raising it in a federal habeas petition." *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009). Petitioner concedes that he failed to present this insufficiency claim in his first state appeal. However, he contends that because he did not receive an appealable conviction on the merged felonious assault counts, he was barred from raising such a claim. Thus, Petitioner essentially argues that raising this claim would have been futile, which operates as an exception to the exhaustion requirement. *See Turner v. Bagley*, 401 F.3d 718, 724 (6th Cir. 2005). Therefore, the question becomes whether Petitioner *could* have raised his insufficiency claims in his first state

appeal or, if, as he contends, the Ohio courts would not have had the power to reach arguments about his merged felonious assault counts and exhaustion should be excused as futile.

Despite the initial persuasiveness of Petitioner's futility argument, Ohio caselaw undermines his argument. First, as a general matter, Ohio courts recognize that "when evidence is insufficient to support an offense, such matter cannot be ignored merely because the appellate court is remanding for retrial on other grounds."[3] *State v. Donkers*, 867 N.E.2d 903, 917–18 (Ohio Ct. App. 2007); *see also State v. Lovejoy*, 683 N.E.2d 1112, 1119–20 (Ohio 1997). More germane to Petitioner's argument is *State v. Griffin*, 886 N.E.2d 921 (Ohio Ct. App. 2008), a case involving merged counts.

In *Griffin*, a jury found the defendant guilty of felony murder and voluntary manslaughter. *Id.* at 923. At sentencing, the trial court merged the defendant's voluntary manslaughter count into the felony murder count and imposed a sentence only on the felony murder count. *Id.* Therefore, the defendant only stood convicted on the felony murder count. The defendant appealed the felony murder conviction and secured a reversal of that conviction based on improper jury instructions. *Id.* at 924–26. In addition to the jury instruction argument, on which he prevailed, the defendant in *Griffin* also contended that there was insufficient evidence to convict him of either felony murder or voluntary manslaughter. *Id.* at 927. Because the case was being remanded for retrial, the state appellate court needed to address the defendant's arguments that there was insufficient evidence as to both his felony murder count *as well as* his voluntary manslaughter count. *Id.* Only after finding that sufficient evidence supported the jury's verdicts as to *both* offenses did the appellate court

---

[3] This approach accords with our "practice of reaching the sufficiency claim in situations where defendants have alleged both that the evidence against them was insufficient and that their trials were infected with procedural errors." *Patterson v. Haskins*, 470 F.3d 645, 652 (6th Cir. 2006).

remand for a new trial. *Id.* at 927–28. *Griffin* provides an example of an Ohio case in which the defendant had merged counts and the state appellate court nonetheless entertained arguments about the insufficiency of the merged count.

Petitioner's case squares with *Griffin*. Both Petitioner and Griffin sought reversal on grounds that would not implicate double jeopardy, and both were successful in that respect. *Compare Smith I*, 2004 WL 102285, at *7, *with Griffin*, 886 N.E.2d at 924–26. The relevant distinction for present purposes is that while Petitioner failed to raise an insufficiency claim with respect to his merged counts, the defendant in *Griffin* did. Because the insufficiency claim was raised, the *Griffin* court addressed it. *See Griffin*, 886 N.E.2d at 927. Unlike the defendant in *Griffin*, Petitioner did not give the Ohio courts an opportunity to review his insufficiency claim; an opportunity, *Griffin* shows, that the Ohio courts would have been required to take. *See Donkers*, 867 N.E.2d at 917–18; *see also Griffin*, 886 N.E.2d at 927.

Ohio cases, such as *Williams*, that involve an appellate court's refusal to consider insufficiency claims with respect to merged counts when affirming the trial court do nothing to detract from *Griffin* and the general rule that insufficiency claims will be considered if raised. Unlike in *Griffin*, the court in *Williams* rejected all of the defendant's arguments regarding the propriety of his conviction with respect to his "having-a-weapon" conviction. *Williams*, 968 N.E.2d at 33. After so concluding, it declined to reach the defendant's insufficiency arguments with respect to his merged stolen property and carrying a concealed weapon counts, which had been merged with the having-a-weapon count for sentencing. *Id.*

This result does not prove what Petitioner would like it to: that Ohio courts will not entertain arguments about merged counts (which could then potentially excuse his failure to exhaust his insufficiency claims). Double jeopardy is only implicated where there is a possibility of retrial or resentencing. *See Johnson*, 467 U.S. at 498. In Ohio, when an appellate court affirms a defendant's conviction in its entirety, any error with respect to merged counts is rendered "harmless beyond a reasonable doubt," *State v. Powell*, 552 N.E.2d 191, 200 (Ohio 1990), *superseded by constitutional amendment on other grounds as noted in State v. Smith*, 684 N.E.2d 668, 683 n.4 (Ohio 1997), because the defendant does not stand convicted of those counts and faces no possibility of retrial on those counts. Therefore, because in *Williams* there were to be no further proceedings, double jeopardy was not implicated, and there was no need to address the defendant's insufficiency arguments.

In conclusion, *Griffin* demonstrates that if a defendant raises an insufficiency claim with respect to merged counts and there will be a retrial, Ohio courts will entertain and address such arguments. It was therefore not futile for Petitioner to have presented his insufficiency arguments as to his merged felonious assault counts to the state appellate court in his first appeal. As in *Griffin*, if Petitioner had raised such arguments, they would have been addressed. Having failed to present such arguments to the Ohio courts, our exhaustion requirement proves fatal to Petitioner's request for habeas relief. *Phillips*, 668 F.3d at 810. We therefore conclude that Petitioner was also not entitled to a writ of habeas corpus on this basis because he failed to exhaust these arguments in state court before presenting them to this Court. *See Wagner*, 581 F.3d at 417.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's denial of a writ of habeas corpus to Petitioner.

**HELENE N. WHITE, Circuit Judge, concurring.** I join the affirmance of the district

court's denial of Garey Smith's habeas petition. However, I write separately to address the

appropriate standard of review. I agree that Smith's petition was properly brought under § 2241

because at the time he filed it he was not "in custody pursuant to the judgment of a State court." 28

U.S.C. § 2254(a). A habeas petition arises under § 2241 and de novo review applies—as opposed

to the Antiterrorism and Effective Death Penalty Act's (AEDPA) deferential standard codified under

§ 2254[4]—when a pretrial detainee seeks habeas relief because the pretrial-detainee petitioner is not

in custody pursuant to a state-court judgment, but rather pursuant to an indictment. *Phillips v. Court*

*of Common Pleas, Hamilton Cnty., Ohio*, 668 F.3d 804, 809–10 (6th Cir. 2012). But subsequent to

the filing of this action, Smith was convicted in state court, has exhausted his appellate remedies,

and is currently serving his sentence. In appealing the denial of habeas relief, he asks us to vacate

his state-court convictions. The law is unclear whether a habeas court should continue to apply the

---

[4]In relevant part, § 2254 provides:

An application for a writ of habeas corpus *on behalf of a person in custody pursuant to the judgment of a State court* shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

§ 2241 de novo standard when the petitioner is subsequently convicted and is in custody pursuant to a state-court judgment.

The cases cited by the majority contain language suggesting that the application of § 2254 or § 2241 is determined by the petitioner's custody status at the time the habeas petition is filed. *See id.* at 810 ("The First, Fifth, Ninth, and Tenth Circuits have concluded that the deference that § 2254(d) requires never applies to habeas petitions brought by pretrial detainees under § 2241, and no circuit to our knowledge has held otherwise." (citations omitted)); *Stow v. Murashige*, 389 F.3d 880, 882 (9th Cir. 2004) ("[W]e hold that Stow's habeas petition is properly considered under 28 U.S.C. § 2241, not § 2254, because at the time Stow filed his petition he was not 'in custody pursuant to the judgment of a State court.'"); *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987) ("Pre-trial petitions . . . are properly brought under 28 U.S.C. § 2241, which applies to persons in custody regardless of whether final judgment has been rendered and regardless of the present status of the case pending against him."). However, *Phillips*, *Stow*, and *Dickerson* do not address Smith's situation. Unlike Smith, the petitioners in *Phillips*, *Stow*, and *Dickerson* were not convicted in state court during the course of their habeas proceedings and thus these cases do not address whether § 2254 would apply in that situation. These cases simply held that jurisdiction was appropriate under § 2241, and that the petitioners could seek habeas relief notwithstanding that they were not in custody pursuant to a state-court judgment.

In contrast to these cases, the Tenth Circuit in *Yellowbear v. Wyoming Attorney General* addressed an appeal from the denial of a pre-conviction § 2241 petition after the petitioner had been convicted in the interim. *See* 525 F.3d 921 (10th Cir. 2008). The court stated:

16

> Mr. Yellowbear brought this action under 28 U.S.C. § 2241. Section []2241 is a vehicle for challenging pretrial detention, or for attacking the execution of a sentence. A § 2254 petition, on the other hand, is the proper avenue for attacking the validity of a conviction and sentence. In its current posture, Mr. Yellowbear's claim that the state court lacked jurisdiction over him is an attack on his conviction and sentence. His petition must therefore be brought under § 2254.

*Id.* at 924 (internal citations omitted). The *Yellowbear* court remanded the case to permit the district court to provide the petitioner with an opportunity to re-characterize his § 2241 action as arising under § 2254. *Id.* at 924–25. In *Jackson v. Coalter*, the petitioner filed a petition under § 2254, although he was a pretrial detainee. *See* 337 F.3d 74 (1st Cir. 2003). The district court proceeded to adjudicate the matter on the basis that habeas relief is available to pretrial detainees under § 2241. The First Circuit concluded that the petitioner's interim guilty plea, subjecting him to a state-court judgment, made it unnecessary to address whether the district court properly proceeded under § 2241, and then decided the case under § 2254, applying AEDPA deference to the petitioner's double jeopardy claim. *Id.* at 79, 81. However, just as the cases cited by the majority do not directly address the issue before us, so too the cases from the First and Tenth Circuits do not address the issue head on.

Nevertheless, it is unnecessary to decide whether de novo review or AEDPA deference applies to Smith's claims because his claims fail under either standard.